Hugh McFarlane

*v.*

William H. Williams.

*Filed at Ottawa June 16, 1883.*

1. Landlord and tenant—*as to amount of rent to be paid—whether terms of an agreement to lease are uncertain—how the amount may be ascertained.* A contract for a lease of premises provided that the rent to be paid yearly was $1513.84, subject to any errors in the figuring thereto attached, which, with the parol evidence identifying the figuring, showed that the rent to be paid was six per cent on the cost of the property: *Held,* that the lease was not void for indefiniteness and uncertainty as to the amount of the rent. The sum named was certain, and must govern unless a mistake in the estimate was shown, and this might have been done without the proviso providing for its correction, and parol evidence was admissible to show such mistake.

2. So where a person had purchased a number of lots, a part of which he agreed to lease to the party negotiating the purchase, at a certain annual rental named, the amount to be subject to correction if there were any errors in the figuring on a paper attached to the contract, and it appeared that the sum named was intended to be six per cent on the *pro rata* cost of the lots, it was *held,* that the amount of the rent was not uncertain, as it could be readily estimated what the lots to be leased cost, by comparing the number of square feet in them with the square feet in the entire purchase, and that six per cent on that sum was the rent to be paid.

3. A contract for a lease is sufficient if it gives the data by which the amount of rent may be found, leaving it to be worked out by calculation, and it is also sufficient to state a gross sum supposed to represent that calculation, subject to the correction of any mistake that may be found in such calculation. But when the sum is stated it will be presumed to be correct, until a mistake therein is clearly proven.

4. Same—*as to time of payment of rent.* Where a contract for a lease provides that the rent is to be paid annually, but fixes no time of payment, and no contrary usage is shown, the rent will be payable at the end of each year.

5. Same—*as to time when lessee shall pay taxes.* Where an agreement for a lease requires the lessee to pay all taxes on the demised premises, without stating the time of payment, they must be paid when due, the time being fixed by law, or paid so as to avoid any sale of the property.

6. Same—*whether lessee must sign the lease, in order to bind him to the payment of rent.* Where a lease recites that the lessee is to pay a certain

3—107 Ill.

sum as rent for the premises, his acceptance of the lease makes him a direct obligor or promisor to pay the rent, although he has not signed or executed the instrument. Such an instrument is not a unilateral contract.

7. Same—*of the consideration of an agreement to make a lease.* The promise or obligation of a lessee to pay rent is a sufficient consideration for an agreement to lease the premises to him.

8. Specific performance—*laches.* Where a bill was filed within three months after the absolute refusal of the owner of premises to lease the same to the complainant, according to his written agreement to do so, for a specific performance of the contract, and the complainant in the meantime gave the owner no reason to believe he did not intend to insist upon the performance of the contract, the delay in instituting suit was *held* no bar to the relief sought.

9. Same—*agreement to make a lease—insolvency of the proposed lessee.* Where a party agrees to lease property to another, the insolvency of the latter is no reason for not decreeing a specific performance of the agreement, when he has offered abundant security for the payment of the rent, which is refused because the owner thinks he can do better, and therefore determines not to perform.

10. Mistake—*may be shown by parol evidence, and corrected in equity.* Where a mistake is made in a contract for the payment of a given sum of money, by a miscalculation on a basis adopted by both parties, it is competent to allege and prove the mistake in a court of equity, and parol evidence is admissible to prove the same.

11. Burden of proof—*to impeach consideration of contract.* Where a contract recites an adequate consideration, the burden of proof is on the party seeking to avoid it to impeach such recital by a clear preponderance of evidence.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Geo. Gardner, Judge, presiding.

William H. Williams filed his bill in equity, in the office of the clerk of the Superior Court of Cook county, against Hugh McFarlane, on the 29th day of July, 1881, wherein it was, in substance, alleged, that about the 15th of May, 1880, the Charter Oak Life Insurance Company, of Hartford, Connecticut, was the owner of lots 1 to 5, and lots 10 to 17, inclusive, in Dobbins' subdivision of block 55, of school section addition to Chicago; that defendant was, at that date, desir-

ous of purchasing the same, and employed complainant to negotiate for the purchase thereof; that it was then agreed between complainant and defendant, that in case complainant should procure for defendant the purchase of said premises, defendant would lease to said complainant a portion of said premises, namely, lots 1 to 5, and 10 to 14, both inclusive, for a term of years, upon favorable terms; that complainant, acting in good faith, commenced to negotiate for the premises first aforesaid on behalf of defendant; that to make said agreement more binding, it was agreed, in writing, on the 15th of May, A. D. 1880, that in case said defendant should purchase the first aforesaid premises, he would lease the complainant the last aforesaid premises for the term of one year, commencing on the 1st day of May, A. D. 1880, with the option to complainant to continue said lease for a second year, and again for a third year, with the proviso, that in case defendant should sell or desire to improve said premises, then, in such case, complainant should not have the possession of said premises for said third year; that the yearly rental of said premises should be $1513.84, payable at the end of each year; that said amount was made subject to any errors in figuring six per cent on a valuation of said premises leased as aforesaid, fixing said valuation at $23,564, and the complainant was to pay, as additional rent for said premises, the taxes upon the same for the years so leased,— which contract was duly recorded in the proper office, July 28, 1880, and a copy thereof is annexed to the bill, as an exhibit.

It is further alleged in the bill, that on or about the date of said written contract defendant entered into a contract with said Charter Oak Life Insurance Company to purchase the first above described premises, and subsequently to the entering into said contract to purchase, and prior to the 1st day of May, A. D. 1881, said purchase was duly consummated, and the defendant received from said insurance com-

pany a warranty deed of the premises first above described; that since said 1st day of May, A. D. 1881, the defendant has been in possession of said premises, and, although often requested, has not executed to complainant a lease in accordance with the terms of said contract, nor given possession of said premises to complainant, but has refused, and still refuses, to do so. It is further alleged that complainant is negotiating to lease said premises to other parties, and if he should succeed in doing so, and give them possession, it would cause endless suits, and take months, and perhaps years, to dispossess them, and thereby cause irreparable injury to complainant. It is further alleged that complainant has, in every way, complied with the terms of said contract, and is ready and willing to sign a lease in accordance with said contract, and in every way to comply therewith.

The prayer is that defendant answer without oath, and that he be decreed to execute a lease in accordance with the terms of said contract; that he deliver possession of said premises to complainant; that in case he shall refuse to execute such lease the master in chancery shall execute the same; that the value of the use of said premises from the 1st day of May then last, to the time complainant is given possession, be ascertained, and such amount deducted from the rent due defendant on the 1st day of May, 1882, etc., and for general relief, etc.

The defendant answered the bill, admitting the purchase of the lots from the life insurance company, but denying that he employed complainant to make the purchase, or that complainant acted for him in making said purchase, or that he agreed to lease complainant any of said lots. The answer then sets up and relies upon the Statute of Frauds. It is further alleged in the answer, that the life insurance company, its agent or attorney, employed complainant to assist its solicitor, Judge Van H. Higgins, in making the sale of said

lots to defendant, and has paid complainant for his services in rendering such assistance; that defendant admits signing the written contract made an exhibit to the bill, but alleges that he did not receive from complainant any consideration for such signing, and that it is null and void; that complainant rendered defendant no services, as recited in that instrument, but complainant was employed and paid by said insurance company, or by its agent or solicitor, Judge Van H. Higgins; denies that the legal effect of such agreement is, that yearly rental should be $1513.84, payable at the end of each year, or that the rent was to be on the basis of six per cent on a valuation, but avers that at the time of signing said agreement the figuring was on a basis of seven per cent, instead of six, and that there was no consideration paid defendant for signing same; denies that he has been in possession since May 1, 1881, but says that Warren Springer, with complainant's consent, was in possession of same under a lease from one Holton, from the time defendant bought until the 28th of May, 1881, when defendant bought from Springer a building which covered a large portion of lots 1 to 5, and 10 to 14, inclusive; that immediately after the purchase of said building defendant expended $8000 and upwards in repairing it, and thereby increased the rental value of the property, and shortly thereafter leased it to Charles Karstner & Co., who are now occupying the same; denies that complainant has kept his agreement; alleges delay and *laches* in filing the bill; alleges that complainant was insolvent at and for a long time prior to May 1, 1881, and claims, finally, that complainant's remedy, if he has any, is at law.

On final hearing the court decreed a specific performance in conformity with the prayer of the bill. From this decree an appeal was prosecuted to the Appellate Court for the First District, where the decree of the Superior Court was affirmed. The present appeal is from that decision.

Mr. Wm. H. & Mr. J. H. Moore, for the appellant:

The contract is so indefinite and uncertain that no one can tell when the rent is payable, or how much. A valuable consideration, particularity, certainty, and a necessity for performance, are the requisites upon which the equity of the case arises. Waterman on Specific Perf. secs. 6, 141, 149.

If any of the material portion of the terms be omitted or left in doubt, the court will regard the transaction as imperfect, and resting in treaty only. Taylor on Landlord and Tenant, sec. 46, and note; *Grace* v. *Dennison*, 114 Mass. 17; *Nichols* v. *Williams*, 22 N. J. 17; *Gosse* v. *Jones*, 73 Ill. 509; *Brix* v. *Ott*, 101 id. 74.

The contract is not based upon any consideration, and can not be enforced. *Gilbert* v. *Holmes*, 69 Ill. 556; *Lear* v. *Chouteau*, 23 id. 42; *Taylor* v. *Merrill*, 55 id. 61; *Frisbie* v. *Ballance*, 4 Scam. 287.

Williams was insolvent on and prior to the 1st day of May, 1881,—the time when the tenancy was to commence. Insolvency is a bar to the specific contract for a lease. Taylor on Landlord and Tenant, sec. 47; Waterman on Specific Perf. sec. 433; Fry on Specific Perf. sec. 634; Pomeroy on Specific Perf. sec. 332.

The case of the complainant is barred by change of circumstances, *laches*, and lapse of time. Williams sat by until July 29, 1881, when McFarlane had expended $10,000 upon the building, and three months after May 1, when the tenancy was to commence, before filing his bill.

The enforcement of a contract is within the sound legal discretion of the court. Courts always hesitate to compel specific performance "when there is anything, by reason of the change in circumstances in regard to the property, that makes it unconscionable" for them so to do. *Iglehart* v. *Vail*, 73 Ill. 65; *Kimball* v. *Tooke*, 70 id. 565; *Stone* v. *Pratt*, 25 id. 25; *Fish* v. *Lesser*, 69 id. 396; *Mississippi and Missouri R. R. Co.* v. *Cromwell*, 91 U. S. 645.

Time is the essence of a contract for a lease.    Waterman, sec. 460; Taylor on Landlord and Tenant, sec. 49.

Mr. H. C. Noyes, and Mr. E. S. Williams, for the appellee:

If there is no usage or agreement to the contrary, the rent is payable at the end of the term.    Taylor on Landlord and Tenant, sec. 391; 3 Kent's Com. 374; *Dixon* v. *Niccols et al.* 39 Ill. 386.

As to the taxes, they could not, from the nature of the case, be made payable at any particular time.    As to the consideration, it was sufficient that Williams agreed to pay rent.

Mr. Justice Scholfield delivered the opinion of the Court:

The objections relied upon by counsel for appellant for a reversal of the judgment below, will be noticed, so far as deemed important, in the order in which they are urged in their printed argument.

*First*—It is contended the alleged contract for a lease is indefinite and uncertain.    This is the language of the contract:

"It is hereby stipulated and agreed, that in case I purchase lots 1 to 5, and lots 10 to 17, in Dobbins' subdivision of block 55, of the school section addition to Chicago, that I will lease to W. H. Williams said lots 1 to 5, both inclusive, and said lots 10 to 14, both inclusive, for one year, from 1st May, 1881, with the option to said Williams to have said lease extended for one year, and again for another year,—the last year, however, to be subject to the right of said McFarlane to sell said premises, or to improve them.    This is made in consideration of services rendered by the said Williams in effecting the purchase of the said property.

"Witness my hand and seal this 15th day of May, 1880.

"The rent to be paid by the said Williams is $1513.84, subject to any errors in the figuring hereto attached, and the taxes on the property so leased.

(Signed)-                    H. McFarlane.    [Seal.]"

Certain papers, with calculations thereon, are attached to the paper on which the contract is written.

The respect wherein it is contended the contract is indefinite and uncertain, is, first, in the amount of rent to be paid; second, the time when it is to be paid; and third, the time when the taxes are to be paid. We perceive no difficulty in either respect. The amount of rent specified in the contract is, beyond all question, definite and certain. It is $1513.84. But does the fact that the probability of a mistake in this amount is contemplated, and a provision is inserted in the contract providing for its correction, make any difference? Surely not. Had no such provision been inserted, it would undoubtedly have been competent to have alleged and proved the mistake in a court of equity, and parol evidence would have been admissible to have shown the mistake. (Kerr on Fraud and Mistake, (Bump's ed.) 416.) But again, "that is certain which may be rendered certain," is a maxim which may with propriety be applied here. It is proved the amount agreed to be charged for rent was ascertained in this way: The five lots fronting on Canal street were 110 feet one way, and 100 feet the other way, making 11,000 square feet. There were eight lots fronting on Harrison street, each 24 feet wide. By multiplying the 24 by 8, the total width of these lots is obtained. One of the lots, however, was 3 feet wider than the others, and there was, therefore, this 3 feet to be added to the total width of the lots. And then there was, also, a private alley between the lots, which was likewise to be added to the total width, making, in all, the total width 205 feet, which, being multiplied by the length or depth of the lots, (100 feet,) makes 20,500 square feet. To this 1950 was

added on account of a private alley, and then the 11,000 feet for the lots on Canal street, making a total of 33,450 feet. From this was subtracted 7920 feet, on account of the lots retained by McFarlane, (being 15, 16 and 17,) leaving 25,530 square feet as the number of square feet in the nine lots leased to Williams. The purchase price of the property was $31,000, which, being divided by the whole number of square feet, gave the purchase price per square-foot, and that being multiplied by 25,530, gave the purchase price of the nine lots leased to Williams, and upon this amount interest was computed at six per cent, as determining the amount of rent to be paid by Williams. The value of the lots leased to Williams, thus ascertained, was $23,564, and in the original calculation six per cent on this amount was counted as amounting to $1513.84, by mistake, instead of $1413.84. The error is patent upon the face of the calculations. Now, these facts are all distinctly shown by the figures and calculations annexed to the contract. It is true it required parol evidence to explain what the figures meant, but this, we have seen, was perfectly competent for the purpose of explaining and correcting a mistake. The only dispute in the evidence on this question is, whether the rate should be six or seven per cent, appellant testifying that it should be the latter, but in our opinion the evidence clearly shows that he is wrong, and that the rate was six per cent.

In our opinion it would have been sufficient to have shown, in the agreement, the data by which the amount of rent was to be ascertained, leaving it to be worked out by calculation, and it was sufficient to state a gross amount supposed to represent such calculation, subject to the correction of any mistake that might have occurred in ascertaining that amount. In such case there is no real uncertainty,—the amount must always be precisely the same,—the only difficulty lying in the proof of what was the data upon which the calculation was made. The amount stated being *prima facie*

correct, must be taken as the true amount until it is clearly and unequivocally proved that another and different amount is the true amount, and then that amount, when ascertained, in presumption of law, is the amount which the parties contracted should be paid, and must have been paid, in order to comply with the contract. The mistake of counsel for appellant, here, is in assuming that a mistake in stating the true terms of a contract, and uncertainty in the terms of a contract, are one and the same thing. In the former case, in presumption of law, there is no uncertainty, while in the latter case there can be no accurate knowledge of what the terms of the contract really were, and hence the court can not know what should be enforced.

The time of payment of the rent, here, is, clearly, the end of the year, no usage or agreement being shown to the contrary. (*Dixon* v. *Niccolls et al.* 39 Ill. 386; Taylor on Landlord and Tenant, sec. 391.) The taxes were to be paid when due, and this is fixed by law. They must be paid so as to avoid a sale of the property for their non-payment, or the enforcement of any personal liability against the lessor on account thereof.

*Second*—The next contention of counsel for appellant is, the contract is not based upon any consideration. This is not, in our opinion, sustained by the record. The contract recites an adequate consideration, and the burden is upon appellant, if he would impeach that recital, to do so by a clear preponderance of evidence. Waiving the question whether, in the absence of evidence of fraud or mistake, appellant is estopped by such recital, we think he has not clearly and unquestionably proven that it is untrue. At most, it could only be said the evidence is contradictory, and the question is not free from doubt.

But again, this is not a unilateral contract, as is assumed by appellant's counsel. By accepting the deed,—as, technically, the contract is,—appellee became bound by the obliga-

tions it imposed upon him. Although a deed poll, it recites that appellee is to pay $1513.84 rent, etc., and his acceptance makes him a direct obligor or promisor to this effect. (*Kershaw* v. *Kershaw*, 102 Ill. 307; *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35; *Schmucker* v. *Sibert*, 18 Kan. 104.) So it is said in Fry on Specific Performance, (2d Am. ed.) 202, *137, sec. 298: "An agreement contained in a deed poll was enforced, notwithstanding an objection which was taken from the unilateral nature of the instrument." And the author refers to *Otway* v. *Braithwaite*, 1 Finch, 405, and *Butler* v. *Powis*, 2 Coll. C. C. 156. See, also, to like effect, *Old Colony R. R. Co.* v. *Evans*, 6 Gray, 25. The promise to pay rent was a sufficiently valuable consideration for the promise to lease. See Chitty on Contracts, (11th Am. ed.) page 50, note d.

*Third*—It is contended the insolvency of appellee was, of itself, a sufficient reason why appellant should not execute the lease as required by the terms of the contract. To this we think there are two sufficient answers. First, the proof does not establish the fact that appellee was insolvent on the 1st of May, 1881. It is unnecessary to recite and comment upon the evidence on this point. It is enough to say that we have carefully examined and considered it, and while it undoubtedly establishes that appellee was a man of small means, it does not establish that he was insolvent at that time. Second, appellee offered abundant security that he would pay all rent, and this was rejected, not because of its insufficiency, but because appellant had determined that he could do better, and would therefore fail to perform his contract with appellee.

*Fourth*—It is next insisted the decree neither conforms to the allegations of the bill nor the evidence; that "the bill alleges that the yearly rental of said premises to be paid defendant by complainant, should be $1513.84," while the decree provides that the amount shall be $1413.84. This is

not a fair presentation of the allegation of the bill in this respect. The bill alleges that the amount of $1513.84, stated in the contract to be the yearly rental to be paid by appellee to appellant, was "subject to any errors in figuring six per cent on a valuation of said premises   *   *   *   at $23,564," and hence, of necessity, it results that the amount to be paid, instead of being $1513.84, must be $1413.84. And this, we have seen, is borne out by the evidence.

*Fifth*—The remaining objection is, appellee is barred by *laches* and lapse of time. Appellant's refusal became absolute May 1, and the present bill was filed on the 29th of July following,—within less than three months. Appellee gave appellant no reason to believe, that we have been able to discover, upon the faith of which he was justified in acting, that he did not intend to insist upon his rights under the contract. No peculiar circumstances are shown requiring greater promptness in filing the bill than appellee used. Appellant's refusal was inexcusable and willful, and he is entitled to no sympathy not due in general to all who break their engagements in order to make profit thereby.

The judgment below is affirmed.

*Judgment affirmed.*