## W. D. KNIGHT, Appellant, v. GEORGE C. ORCHARD et al., Respondents.

### St. Louis Court of Appeals, February 18, 1902.

1. **Covenant: IN A LEASE TO PAY TAXES: RENT.** The covenant in the lease, in the case at bar, to pay the taxes, must from the evident intention of the parties, be recognized as an agreement to pay them as a part of the rent. While they are not expressly so named, yet the parties to the contract clearly so intended, and this is the necessary implication.

2. **Forfeiture of Lease: CONTRACT, CONSTRUCTION OF.** Forfeitures are not favored by the law, and when it is sought to enforce one, the court will scrutinize the contract very closely for the purpose of ascertaining whether or not the party seeking to enforce the forfeiture has in every particular complied with the terms of the contract in both its letter and spirit, and if the court discovers that there is a material benefit secured by the contract to the other party, that he has not lost by the forfeiture and that has not been restored or tendered to him, the court will refuse to enforce the forfeiture.

3. ———: ———: ———. In the case at bar, plaintiff promised to compensate the lessee for such permanent improvements as he should erect on the premises and she can not avoid the obligation by declaring a forfeiture of the lease for non-payment of rent. Plaintiff made no effort to pay for the improvements, and to permit an ouster in such circumstances would be highly inequitable.

Appeal from Butler Circuit Court.—*Hon. J. L. Fort*, Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

We adopt the statement of the case made by appellant as it is a full and fair history of the proceedings both before the justice and the circuit court. It is as follows:

"This action was commenced originally before a justice of the peace of Butler county, for the purpose of recovering possession of the premises described in the complaint. A trial was there had, resulting in a judgment for the plaintiff for the recovery of the possession of the premises. From this judgment defendants prosecuted an appeal to the circuit court where a trial was had *de novo*.

"The facts established in this record, and which are undisputed, are about as follows:

"That in 1898, and prior thereto, and now, the plaintiff was and is the owner of the lot or parcel of ground described in the complaint. That on the ninth day of March, 1898, she executed to A. Saracini the lease or contract described in the complaint and read in evidence on the trial. By the terms of that lease, the said A. Saracini acquired the right to the possession, use and occupation of the said premises for a period of twenty years from that date, on condition that he complied with all the terms and conditions thereof. One of the conditions and agreements contained in the said lease is as follows, to-wit:

"That 'the party of the second part, in consideration of the leasing of the premises aforesaid, agrees to pay as rent for the said premises the sum of ten dollars per month, payable monthly in advance, on the ninth day of each and every month during the term of this lease, and to pay all state, school and municipal taxes, whether general or special, and including

special assessments which may be levied and assessed against the leased premises during the term of said lease......Whenever and as often as any installment of rent, or other sum declared to be payable or deemed to be taken as rent, shall be due and shall remain unpaid for a period of ten days after the same shall become due and payable, the said party of the first part may at her election, ... declare this lease at an end, and recover possession as if said premises were held by forcible detainer.'

"That Saracini took possession under said lease, and substantially complied with the terms of said lease until the time of his death, which occurred some time in 1900. After his death his wife qualified as executrix under his will and took charge of the estate, and paid the monthly installments of rent up to and including the month of March, 1901.

"The state, county and school taxes assessed against the said premises, for the year 1900, amounting to the sum of $23, became due and payable on the first day of August, 1900, and became delinquent on the first day of January, 1901. These taxes Mrs. Saracini failed to pay. On or about the first day of January, 1900, plaintiff's agent, Mr. Renfro, went to Mrs. Saracini and asked her whether she had paid the taxes for 1900, and was told by her that all taxes had been paid. When asked to show her tax receipt, she made pretense of making a search therefor, but that she was unable to find the same, but again assured Mr. Renfro that she had paid the taxes. Plaintiff's agent relied upon her statement that the taxes had been paid, and made no further investigation until about the ninth of April, 1901, when he chanced to meet Mrs. Saracini on the street and asked her whether she had found her tax receipt. She replied she had not, but again assured him that all taxes had been paid; but something in her actions aroused Mr. Renfro's suspicion that possibly the taxes had not been paid, when he went to the collector's office and found that the taxes had not been paid. He then, under instructions from plaintiff,

paid the taxes, went to Mrs. Saracini's residence, showed her the tax receipt, told her that the taxes had not been paid by her, and that he had paid the taxes, and that, under instructions from the plaintiff, he as her agent had elected to declare the lease at an end; that she had forfeited the lease by failing to pay the taxes for the year 1900. That he at the same time notified defendant Orchard, who he understood was negotiating for a purchase of leasehold interest, that he had declared the lease at an end, for failure to pay the taxes. He also notified defendants Henderson of that fact, and demanded that they pay the rent to him as the agent of plaintiff.

"Prior to this time Mrs. Saracini had sublet the premises to defendant T. J. Henderson, and he and his son Charles were occupying the building. Subsequent to the conversation referred to, Orchard took an assignment of the lease from Mrs. S., and defendants Henderson had attorned to him and agreed to pay rent to him as his tenants.

"Neither plaintiff nor her agent had any knowledge of the fact that the taxes had not been paid for 1900 until the tenth day of April, 1901, but on the contrary relied upon the statement of Mrs. S. to the effect that the taxes had been paid. They immediately elected to declare the lease forfeited for non-payment of taxes, and refused to receive any more payments as rent on said premises. No payments were made or received thereafter.

"Upon this state of the evidence, the court sustained a demurrer to the testimony and rendered judgment against the plaintiff for costs, and plaintiff brings the case to this court by appeal."

No brief for appellant.

*Phillips, Phillips & Thomas* for respondents.

(1) Rent is a certain (determinate) profit either in money, provisions, chattels or labor, issuing out of lands and

tenements in retribution or return for their use. 2 McAdam on Landlord and Tenant, p. 902; Merritt v. Fisher, 19 Iowa 354; 2 Bouvier's Law Dict., p. 535. (2) Taxes are rents, only, in the sense that the obligation to make repairs are so and not otherwise, and then only such taxes as are reasonably certain, or are susceptible of computation, or proof. *Certum est quod, certum neddi potest.* 1 Bouvier, 214; 2 McAdam on Land and Tenants, p. 902. (3) The language of the lease is "to pay the party of the first part, or her order, as rent for the said premises, the sum of ten dollars per month, payable monthly in advance, on the ninth day of each and every month during the term of this lease." This is a provision for the payment of a certain, a determinate rent, pure and simple, and for the non-payment of which a forfeiture might be declared. McAdam on Land and Tenants. (4) The further language of the lease, "and also to pay all state, school and municipal taxes (not county taxes), whether general or special, including special assessments that may be assessed against the premises herein leased during the term of said lease," is an entirely distinct obligation, and is rent only in the sense that the tenant must pay the taxes named, and if he does not, the landlord may do so and recover the amount paid of the tenant. McManus v. Shoe & Clothing Co., 60 Mo. App. 218; Elliott v. Grant, 64 Mo. App. 248.

BLAND, P. J.—The learned circuit judge ruled that the lease did not authorize a forfeiture for the non-payment of taxes; that rent in the lease did not mean taxes. In Gedge v. Schoenberger, etc., 83 Ky. 91, a lot was leased "for a term of ten years from the first day of May, one thousand eight hundred and seventy-three, at the yearly rent or sum of one hundred and fifty dollars; also to pay all taxes and assessments during said term. Said rent to be paid in equal semiannual payments." Speaking of this covenant in the lease the court said: "The covenant to pay the taxes must, from the evident

intention of the parties, as shown by the lease, be regarded as an agreement to pay them as a part of the rent. While they are not expressly so named, yet the parties to the contract clearly so intended, and this is the necessary implication." This case was approvingly cited in McManus v. Shoe & Clothing Co., 60 Mo. App. l. c. 218.

In Elliot v. Gantt, 64 Mo. App. 248, it was held that a covenant in a lease to pay taxes must be construed as one to pay the taxes as a part of the rent. Rent has been defined to be "a right to a certain profit issuing periodically out of lands and tenements corporeal, or out of them and their furniture, in retribution for the land that passes." 2 Min. 1st. 32. The profit must be certain or capable of being reduced to a certainty by either party. Commonwealth v. Contner, 18 Pa. St. l. c. 447; Cross v. Tome, 14 Md. 247; McFarlane v. Williams, 107 Ill. 33; 2 Bl. Com. 41. Taxes are capable of being reduced to a certainty (they are the most certain as to periodical recurrence of all human affairs and their sum is never left in doubt after the taxbooks are made up) so that there is nothing in the cases holding that a covenant by a lessee to pay taxes should be construed as a covenant to pay rent; that militates against the definition of rent.

The covenant in the lease before us to pay taxes is not distinguishable from the covenant to pay taxes in the Gedge and Elliott cases and we think that the covenant to pay the taxes should be regarded as an agreement to pay them as a part of the rent. There is another clause in the lease which merits attention, in view of the fact that plaintiff is seeking to enforce a forfeiture. It is disclosed by the evidence that the lessee has erected one or more buildings on the premises. In respect to improvements the lease contains the following provisions:

"And it is further agreed by and between the parties hereto, that all the buildings and improvements of every kind placed upon the said premises by the party of the second part

are to be and remain the property of the party of the second part, and at the termination of this lease may be sold by him to the party of the first part, if the parties can agree upon the amount; if not, then the party of the second part is to have the right to remove the said property from the said premises, or to sell it to some other person or persons, or to re-lease anew.

"It is further agreed between the parties hereto, that default of any agreement between the parties as to the purchase price of said buildings at the termination of this lease, that the same shall be referred to a board of arbitrators, two of whom shall be chosen respectively by the parties hereto, and the third to be chosen by the parties thus chosen, which board of arbitrators shall determine the matter referred to them as soon as may be, and fix the price of the said buildings and improvements, as provided in the contract, and that the judgment and findings of the said board is to be conclusive and binding to both of the parties to this contract alike; and we do hereby agree to abide by the decision of the said board of arbitrators as to all matters submitted to them for their decision."

The lease does not provide that a forfeiture for the non-payment of rent shall also forfeit the lessee's right to the value of his improvements on the termination of the lease by forfeiture. His right to compensation for these improvements is not taken away by his failure to pay taxes. The improvements being upon the leased premises gave him an interest in the premises of which he should not be deprived without compensation. The plaintiff, in disregard of these rights, declared a forfeiture and seeks by her suit to possess herself of the premises including the improvements. Forfeitures are not favored by the law and when it is sought to enforce one, the court will scrutinize the contract very closely for the purpose of ascertaining whether or not the party seeking to enforce the forfeiture has in every particular complied with the terms of the contract in both its letter and spirit and if the court discovers that there is a material benefit secured by the contract to the other party,

that he has not lost by the forfeiture and that has not been restored or tendered to him, the court will refuse to enforce the forfeiture. Plaintiff promised to compensate the lessee for such permanent improvements as he should erect on the premises and she can not avoid this obligation by declaring a forfeiture of the lease for non-payment of rent. Plaintiff made no effort to pay for the improvements; to permit an ouster in such circumstances would be highly inequitable. "Good conscience is the beacon light that points the way out of a forfeiture," said McAdam in his work on Landlords and Tenants (vol. 1, p. 651). It would not be good conscience to permit plaintiff to recover possession of the premises and turn the defendants out to recover the value of their improvements as best they might. The injury done plaintiff can be easily compensated in money. There is no evidence of bad faith on the part of the lessee. Mere delay in the payment of taxes will not bar the right of plaintiff to make compensation and avoid the forfeiture. 1 McAdam on Landlords and Tenants, p. 652.

The evidence shows that plaintiff was tendered the taxes she had paid but refused to receive the money. A tender once made is presumed to hold good until it is withdrawn by the party making it. Plaintiff is entitled to nothing more than what the defendant offered her, to-wit, the payment of the sum she paid out for taxes.

Judge *Barclay* concurs in affirming on the ground mentioned in the opinion, but he also considers that the taxes are not to be regarded as rent within the intent of the parties as expressed in the lease. *Goode, J.,* concurs.