## Eugene A. Bournique, Appellant, v. Lucas R. Williams and Clara L. Williams, Appellees.

### Gen. No. 26,949.

1. LANDLORD AND TENANT—*revocability of option to lease or purchase.* A written proposal granting a 30-day option to purchase the described realty at a stated price, or to lease the property for 99 years without revaluation at a stated annual rental, could have been withdrawn at any time before acceptance, where the recited consideration of one dollar was not paid; and the instrument amounted to a continuing offer during the 30-day period.

2. LANDLORD AND TENANT—*effect of acceptance of option to lease.* Although a written proposal granting a 30-day option to purchase the described realty at a stated price, or to lease the property for 99 years at a stated annual rental, could have been withdrawn at

any time before acceptance, because the recited consideration of one dollar had not been paid, the offer was changed into a binding contract upon the acceptance of the option to lease the property for the term and at the annual rental as offered.

3. LANDLORD AND TENANT—*acceptance of proposal to lease as creating contract for lease.* Under the rule that the only essentials to create a valid contract of lease are, first, a definite agreement as to the extent and boundaries of the property leased; second, a definite and agreed term; and third, a definite and agreed rental and time of payment, a proposal to grant a lease of described realty for 99 years, without revaluation at a stated annual rental, was changed into a binding contract after acceptance, and contained all the essential elements of a valid contract for a lease for years.

4. LANDLORD AND TENANT—*time for payment of annual rental where time not specified in lease.* Where the amount of annual rental is fixed in a lease without specifying the time of payment, the law provides that it is payable at the end of the year, no custom or usage to the contrary being shown.

5. SPECIFIC PERFORMANCE—*decree enforcing agreement for 99-year lease.* Specific performance of an agreement for a 99-year lease of described realty, at a stated annual rental without revaluation, was decreed where there was neither fraud nor undue advantage, notwithstanding there was no covenant to pay the taxes and assessments to be levied, and no agreement for the erection of an appropriate building, nor any of the other provisions usual in a 99-year lease; but in view of complainant's offer contained in the tentative offer of a lease presented by him and renewed before the master, it was held that complainant should pay all the taxes and assessments to be levied upon the demised premises and upon improvements and buildings to be placed thereon.

6. LANDLORD AND TENANT—*apportionment of taxes and assessments in absence of special agreement.* In the absence of a special agreement, the duty to pay all taxes and assessments is imposed by law upon the landlord; but it is also the law that even if there is no covenant by the lessee to pay taxes, so much of the taxes as are levied on account of improvements put on the land by the lessee are chargeable to him.

7. SPECIFIC PERFORMANCE—*enforceability of contract for 99-year lease as affected by failure to provide security for rent.* In a bill for specific performance of a contract for a 99-year lease of described property at a stated annual rental without revaluation, where defendant contended that it would be unfair and inequitable to enforce the agreement because defendant would have no security for the payment of the rent, such as the erection of an appropriate building, a sufficient answer was that the contract in question

which embodied the essential elements of a valid contract for a lease made no reference to the erection of a building.

Appeal from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded with directions. Opinion filed April 18, 1922. Rehearing denied April 29, 1922. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** Appellant, hereinafter referred to as complainant, seeks by this appeal to reverse a decree of the circuit court of Cook county, entered January 24, 1921, dismissing for want of equity his bill praying for a specific performance of an agreement for the leasing to him for 99 years of certain real estate situated in the City of Chicago.

On March 18, 1915, the defendants, Lucas R. Williams and Clara L. Williams, executed and delivered to complainant the following proposal:

"March 18th, 1915.

"Mr. Eugene A. Bournique,
    701 First National Bank Bldg.,
        Chicago, Illinois.

"Dear Sir:

"In consideration of $1.00 paid to us, we hereby agree to give you a thirty day option from this date, to purchase our property for $100,000 net to us, or to lease the same to you for ninety-nine years, without revaluation at $5,000 per year.

"The property known and described as follows:

"Lot 1 and 2 in Block 1 in Peleg Hall's Addition to Chicago in Section 21, Township 40, Range 14, in Cook County, Illinois, including all accretions.

"In the event of our not being able to give a good and merchantable title to the above described property, there is no commission to be paid.

Very truly yours,
        L. R. WILLIAMS,
        CLARA L. WILLIAMS."

On April 17, 1915, complainant delivered to defendant, Lucas R. Williams, the following written acceptance of the proposal:

"April 17, 1915.
"Mr. L. R. Williams,
      and Mrs. Clara L. Williams.
   "I have elected to exercise the option given me by you under date of March 18, 1915, to lease the property known as
   "Lots one (1) and two (2) in Block one (1) in Peleg Hall's Addition to Chicago, in Section twenty-one (21) Township forty (40) North, Range fourteen (14) East of the Third Principal Meridian, in Cook County, Illinois.
including all accretions, for a term of ninety-nine years, at an annual rental of five thousand dollars ($5,000) without revaluation.
   "I herewith tender you the sum of twelve hundred and fifty dollars ($1,250) being the rent for the first quarter year of said term, and a lease of said premises for a term of ninety-nine (99) years from this date, at an. annual rental of five thousand dollars ($5,000), for your execution.  This lease has been executed by me.
                                    Eugene A. Bournique."
   At the same time complainant tendered said Lucas R. Williams $1,250 in gold, and a tentative draft of a lease, duly executed and acknowledged by complainant, whereby he as lessee agreed to lease the premises from the defendants for a term of 99 years, beginning on said April 17, 1915, at a rental of $5,000 per year, payable quarterly in advance, and also agreed to pay all taxes and assessments and all other impositions levied or assessed upon the premises.  The draft of a lease also contained other provisions.  Williams received and retained complainant's written acceptance and draft of a lease, but refused the tendered money and refused to execute the draft, and thereafter failed or refused to execute any lease of the premises.  On May 4, 1915, complainant filed the present bill of complaint against defendants, alleging, in substance, the above-mentioned facts and praying that the court decree specific performance of defendants' agreement

for a lease, and require them to execute a lease of the premises to complainant in accordance with the terms of said agreement.

A general and special demurrer to the bill was overruled and thereafter defendants filed an answer (subsequently superseded by an amended answer) setting forth various defenses, and the cause was referred to a master in chancery to take testimony and report the same together with his conclusions.

There was a hearing before the master at which evidence, both oral and documentary, was introduced by the respective parties. On November 4, 1920, the master filed his report in which he found, in substance, that the defendants, Lucas R. Williams and Clara L. Williams, are husband and wife, and that on March 18, 1915, said Lucas R. Williams was, has been since, and is now, seized and possessed of the premises in question; that on said March 18, the defendants executed and delivered to the complainant the proposal above mentioned; that prior thereto, on February 6, 1915, said Williams delivered to complainant an abstract of title to the premises; that the consideration of $1.00 mentioned in the proposal was never paid to the defendants; that the proposal or option was not withdrawn by the defendants at any time prior to the delivery of complainant's said written acceptance thereof; and which written acceptance was delivered by complainant to said Williams on April 17, 1915, at the latter's office in Chicago; that at that time there were present, besides complainant and said Williams, Mr. McNabb, attorney for complainant, and Mr. Charles T. Mason (now deceased), attorney for said Williams; that at said time complainant said to Williams that "he exercised the option and that he tendered a lease which he had executed to show his good faith"; that complainant thereupon tendered to Williams a 99-year lease of the premises, signed and acknowledged by himself, and also tendered to Wil-

liams $1,250 in gold, saying that it was a quarter's rent, a quarter of $5,000, provided for by the option as one year's rent of the premises; that Williams said that "complainant could put the money back, that he was not going to take it anyway, and that he didn't want to bother to count it"; that Williams thereupon gave complainant's written acceptance and draft of lease to his attorney, Mr. Mason, saying to Mason that "he wanted him to look at them," and further saying that he (Williams) wasn't going to sign the lease until his attorney had looked it over"; that thereupon Mr. Mason asked some questions about the lease and said that "he needed a little time to study it"; that thereupon there was some further talk about the provisions of the lease, and Mr. McNabb and complainant both said that "the lease was presented only as an evidence of good faith and that they didn't insist upon the form of lease submitted being executed"; and that complainant's written acceptance and draft of lease remained in the possession of said Williams until the hearing before the master, when they were produced by Williams and offered in evidence by complainant. It appears from the transcript of the testimony taken before the master that regarding the interview had in Williams' office on April 17, 1915, Williams further testified:

"I said to Bournique that I would sign a lease that was agreeable to me; that I wanted a lease that was agreeable to me in conditions, terms, etc. I told him I thought he should give me $5,000 a year in advance, that the building to be erected should cost twice the value of the lots, and that he ought to build a building in one year instead of taking three years. I did not say that I would not sign a lease at all. I am not willing to sign a lease now with Mr. Bournique after all that has happened."

The master further found that the proposal or option amounted only to a continuing offer subject to be withdrawn at any time before acceptance; that al-

though the proposal recited a consideration of $1.00, no consideration was in fact paid; that the proposal was not withdrawn before acceptance, but was accepted by the delivery of complainant's written acceptance of April 17, 1915, and that there was then a complete contract between the parties; that the property in question is vacant and situated at the northwest corner of Byron street and Lake Shore drive, adjoining Lake Michigan; and that among the provisions mentioned in the draft of lease presented by complainant on April 17, 1915, was the provision for the erection on the property of a building which should cost not less than $75,000, and the provision that the lessee (complainant) would pay all taxes and assessments and all other impositions levied or assessed upon the premises or buildings or improvements thereon during the term of the lease. The master in his report then discussed the various contentions made by Williams as to why the contract in question should not be specifically enforced in equity and reached conclusions adverse to the contentions. The master finally concluded that the equities were with the complainant; that "the contract sought to be enforced was clear, certain and unambiguous, just and reasonable," that it was "entered into in open, fair and honorable dealing," and that "it would be unjust and against good conscience to refuse to compel the specific performance thereof." And the master recommended:

"That a decree be entered herein, ordering and directing the defendants forthwith to execute, acknowledge and deliver to the complainant a lease of said premises for the term of 99 years from the date of said decree without revaluation, at a rental of $5,000 per year; said lease to provide that the complainant pay all water rates, taxes and assessments, general and special and all other impositions ordinary and extraordinary, of every kind and nature whatsoever, levied or assessed upon the said demised premises or any

part thereof, or upon any buildings or improvements at any time situated thereon, or levied or assessed upon the interest of the lessors in or under said lease during the term of said lease (except inheritance and income taxes so-called).''

On the hearing before the chancellor, the objections of the defendants to the master's report were ordered to stand as exceptions, and, after arguments had, the decree appealed from, dismissing complainant's bill for want of equity, was entered. In the decree the court did not express any disapproval of the master's findings of fact, but found that the equities were with the defendants, and further found:

(1)  ''That the terms of the contract for a 99-year lease between the parties hereto are so uncertain and ambiguous that the court cannot decree a performance thereof, and that the minds of the parties thereto never met as to what should constitute the terms of said 99-year lease,'' and

(2)  ''That to enforce the contract as drawn, would be unfair and unjust to the defendants, and would be a hardship to them and would deprive them of the proper enjoyment of their property.''

Winston, Strawn & Shaw, for appellant; John C. Slade and Richard H. Hollen, of counsel.

Granville W. Browning and Thomas F. Monahan, for appellees.

Mr. Presiding Justice Gridley delivered the opinion of the court.

Counsel for complainant contend that the circuit court erred in overruling the master's report and in dismissing complainant's bill for want of equity, because

(1)  The said proposal and acceptance together constitute a binding agreement which embraces all the *essential* terms of a valid lease for years.

(2)  The agreement is clear, certain and unambiguous, untainted with fraud or undue advantage, and it

would be unjust to deny to complainant a specific performance of it.

(3) The defendants are precluded from attacking the validity of the agreement or its enforceability in equity, for the reason that at the time performance was originally demanded by complainant they placed their refusal to perform upon other grounds.

Regarding counsels' first point, it is not disputed that on March 18, 1915, the defendants executed and delivered to complainant the written proposal, wherein they agreed to give complainant a 30-day option to purchase the property described therein for $100,000, *or* to lease the property to complainant for 99 years without revaluation at $5,000 per year. The consideration of $1.00, recited in the proposal, was not in fact paid, and defendants could have withdrawn the option at any time before its acceptance. The instrument, therefore, amounted to a continuing offer during the 30-day period. (*Threlkeld v. Inglett*, 289 Ill. 90, 94.) Defendants did not withdraw their offer, and on April 17, 1915 (before the expiration' of said period), complainant in writing "elected to exercise the option" given him to lease the property for the term and at the annual rental as offered. Upon this acceptance defendants' offer was changed into a binding promise. (*Threlkeld v. Inglett, supra*, p. 95; *Carter v. Love*, 206 Ill. 310, 316.) The question arises whether the terms of the contract are sufficiently definite and certain to enable a court of equity to enforce it,—in other words, whether those terms embrace all the *essential* elements of a valid contract for a lease for years. In Jones on Landlord and Tenant, sec. 137a, p. 170, it is said: "Under the authorities, to create a valid contract of lease, but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and bounds of the property leased; second, a definite and agreed term; and third, a definite and agreed price of rental, and the time

and manner of payment. These appear to be the only essentials." This is the rule in Illinois. (*Miller v. Gordon,* 296 Ill. 346, 350.) In the present contract the premises to be demised are definitely described, and a definite term and a definite annual rental are mentioned. The time when the rental is to be paid during each year is not mentioned, but where the amount of the annual rental is fixed without specifying the time of payment, the law provides that it is payable at the end of the year, no custom or usage to the contrary being shown. (2 Tiffany on Real Prop., 2nd Ed., sec. 409; *McFarlane v. Williams,* 107 Ill. 33, 42; *Ridgley v. Stillwell,* 27 Mo. 128, 134; *Parker v. Gortatowsky,* 129 Ga. 623, 626.) We are of the opinion that all the essential elements of a valid contract for a lease for years are contained in the agreement in question. As said in *Miller v. Gordon,* 296 Ill. 346, 350: "Many other agreements and conditions might be incorporated in a lease, and usually are, but they are not essential to a complete and binding lease." And we think it sufficiently appears from the proposal and acceptance, as found by the master, that the parties agreed that the term of the lease was to commence on April 17, 1915, the date of complainant's acceptance of the proposal. (*Miller v. Gordon, supra.*) In *Levin v. Saroff* (Cal.) 201 Pac. 961, 963, it is said: "The mere fact that a written lease was in contemplation does not relieve either of the contracting parties from the responsibility of a contract which was already expressed in writing. When one party refuses to execute the lease according to the contract thus made, the other has a right to fall back on the written propositions as originally made, and the absence of the formal agreement contemplated is not material." Counsel for defendants argue, in substance that, even conceding that the proposal and acceptance would constitute a binding contract for a lease for a *short* term of years, they do not embrace

all the elements essential to a lease for a term of *ninety-nine* years. We do not understand that the rule as to what are the *essential* elements of a lease for years is any different, whether the term is for one year, five years or ninety-nine years. Blackstone says: "An estate for years is a contract for the possession of lands or tenements for *some* determinate period" (Cooley's Blackstone, 2nd Ed., vol. 2, p. 139). In *Bushman v. Faltis,* 184 Mich. 172, a bill for a specific performance of a contract for a lease for 99 years of certain real estate in the City of Detroit was filed and defendant's demurrer to the bill was overruled and he appealed. The contract was certain and definite as to the names of the parties, the description of the property, the length of the term and the amount of the annual rental. In affirming the order of the chancellor in overruling the demurrer the court said, p. 179:

"If the lease provided for in the agreement were for any ordinary short-term lease, the well-established rule might be applied that the law will imply that a lease with usual covenants required by such leases shall be drawn and signed. * * * However, the provision in the instant case being for a 99-year lease, and it not appearing that the execution of 99-year leases has become so common as to establish a custom and make it possible to say what covenants and agreements would usually go into and become part of such a lease, this rule cannot be said to apply. However, as the agreement to lease sets forth definitely in our opinion all the essential requirements of a lease, * * * it cannot be said, because other and different covenants might have been agreed upon, that what in fact has been provided for is too uncertain and indefinite to permit of specific performance."

As to the second point made by counsel for complainant, we are of the opinion that, inasmuch as the agreement is clear, certain and unambiguous and untainted with fraud or undue advantage, specific performance of the agreement should be decreed. (*Cum-*

*berledge v. Brooks,* 235 Ill. 249, 257; *Corrigan v. Ralph,* 265 Ill. 571, 578; *Riemenschneider v. Tortoriello,* 287 Ill. 482, 485.) Counsel for defendants contend here, as they did on the hearing before the master, that it would be unfair and inequitable to enforce the agreement because it does not contain a covenant that complainant is to pay the taxes and assessments levied on the property during the term of the lease. In 24 Cyc. 1074, it is said: ''In the absence of agreement or special covenant, the duty to pay all State, municipal, and county taxes and assessments, which during the term of the lease become chargeable upon the premises, is imposed by law upon the landlord.'' But we also believe it to be the law ''even where there is no covenant by the lessee to pay taxes, so much of the taxes as are levied on account of improvements put on the land by the lessee are chargeable to him.'' (24 Cyc. 1075; 18 Amer. & Eng. Encyc. Law, 2nd Ed. 651; *Watson v. Home,* 7 Barn. & Cress. 285, 290; *Philadelphia, W. & B. R. Co. v. Appeal Tax Court,* 50 Md. 397, 413.) The master, in discussing in his report the contention of counsel for defendants, said:

''It is clear that if the defendants are compelled by decree of this court to execute and deliver a lease of this property to the complainant, the complainant, or his successors in interest, would have the right to erect a building of great value on this property; and the annual taxes on the land and such a building would be far more than the annual rental of $5,000 per year.

''It does not follow, however, that the lessors would have to pay the taxes. As a matter of law, the master believes and so finds, that (while the question is not free from doubt and has never been squarely decided in Illinois) if this contract be construed as not requiring the payment of taxes by either party and as leaving the whole matter of the payment of taxes to be determined by law, the lessors would have to pay the taxes on the land only, while the lessee would have to pay the taxes on any improvements he might erect thereon.

"But the master believes, and so finds, that this contract was intended by the parties, and should be construed as providing that the rental of $5,000 per year is to be *net* to the lessors; that is to say, that the lessee is to pay all the taxes and assessments.
The expression—
'to purchase our property for $100,000 net to us'— taken in connection with the expression,—
'or to lease the same to you for ninety-nine years without revaluation at $5,000 per year,'
seems to make such a construction reasonable and necessary.
Again, the words—
'without revaluation, at $5,000 per year,'
taken by themselves, appear to the master to warrant the construction that the rent is to be a definite and fixed annual rent for the entire term. If the lessors had to pay all or part of the taxes from year to year, which would, of course, fluctuate, depending on the tax rate and the value of the property, the rent enjoyed by the lessors could not be said to be really definite and fixed.

"The ninety-nine year lease provides that the lessee 'will pay all water rates, taxes and assessments, general and special, and all other impositions ordinary and extraordinary, of every kind and nature whatsoever, levied or assessed upon the said demised premises or any part thereof, or upon any buildings or improvements at any time situated thereon, or levied or assessed upon the interest of the lessors in or under this lease during the term of this lease (except inheritance and income taxes so-called).'

"There is nothing in the evidence to show that any objection to this was made by Mr. Williams or his attorney.

"On the argument before the master the complainant by his attorney again offered to pay all taxes and assessments, as aforesaid, during the term of the lease.

"I find, therefore, that there is no merit in the last-mentioned contention of the defendants."'

We agree with the master's statements, his argument and his conclusion.

Counsel for defendants make the further contention, as we understand it, that it would be unfair and inequitable to enforce the agreement because defendants would not have any security for the payment of the annual rent, such as the erection on the premises by complainant of an appropriate building. A sufficient answer to this is, we think, that the contract, embodying the essential elements of a valid contract for a lease for years, makes no reference to the erection of a building on the premises. It is true that in the tentative draft of lease presented by complainant, as evidence of his good faith, there was contained a provision for the erection by him on the premises of a building costing not less than $75,000 within three years, and that upon the presentation of the draft Williams told complainant that any building to be erected should cost twice the value of the lots, and ought to be built in one year instead of three. But it is also true that complainant was not *obligated* by the contract to erect any building on the premises.

In view of the foregoing it is unnecessary for us to discuss the third point, above mentioned, made by counsel for complainant, further than to say that in our opinion it has merit.

Our conclusion is that the decree of the circuit court, dismissing for want of equity complainant's bill, should be reversed and the cause remanded with directions that the court enter a decree for the specific performance of the agreement in question by the defendants. In view of complainant's offer to pay all taxes and assessments levied on the premises during the term of the lease (said offer being contained in the tentative draft of lease presented on April 17, 1915, and renewed on the hearing before the master), we deem it equitable to all parties that the specific recommendations of the master as to the decree be adopted, and, accordingly, we direct the circuit court to enter a decree, ordering and directing the defendants forth-

with to execute, acknowledge and deliver to the complainant a lease of the premises in question for the term of 99 years from the date of said decree without revaluation, at a rental of $5,000 per year,—said lease to provide that the complainant pay all water rates, taxes and assessments, general and special, and all other impositions ordinary and extraordinary, of every kind and nature whatsoever, levied or assessed upon the said demised premises or any part thereof, or upon any buildings or improvements at any time situated thereon, or levied or assessed upon the interest of the lessors in or under the lease during the term of the lease (except inheritance and income taxes so-called).

*Reversed and remanded with directions.*

Barnes and Morrill, JJ., concur.